# UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: UNASSIGNED

| | |
|---|---|
| YAMAMOTO OF ORIENT, INC.,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA;<br>OFFICE OF THE UNITED STATES TRADE<br>REPRESENTATIVE; KATHERINE TAI, U.S. TRADE<br>REPRESENTATIVE; U.S. CUSTOMS & BORDER<br>PROTECTION; TROY MILLER, IN HIS OFFICIAL<br>CAPACITY AS SENIOR OFFICIAL PERFORMING<br>THE DUTIES OF THE COMMISSIONER OF<br>U.S. CUSTOMS & BORDER PROTECTION,<br>                     Defendants. | Court No. 21-00223 |

## COMPLAINT

Plaintiff Yamamoto of Orient, Inc. ("Yamamoto"), by and through its attorneys, alleges and states as follows:

1. This Complaint focuses on Defendants' unlawful imposition of a third round of tariffs on products covered by so-called "List 3" pursuant to the investigation into China's unfair intellectual property policies and practices under Section 301 of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2411) by the Office of the United States Trade Representative ("USTR"). *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 47,974 (Sept. 21, 2018).

2. Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. But USTR failed to issue List 3 within that window. USTR's reliance on Section 307 of the Trade Act (19 U.S.C. § 2417) for the imposition of Section 301 tariffs under List 3 is unjustified. Section 307

of the Trade Act does not allow USTR to expand the imposition of tariffs it originally imposed under Section 301 of the Trade Act to imports from China for unrelated reasons such as the imposition by China of retaliatory duties or alleged devaluation of its currency.  If USTR deems the existing tariffs "no longer appropriate," as it did here, the Trade Act permits USTR to delay, taper, or terminate actions it has previously deemed appropriate under 19 U.S.C. § 2411(b)(2) based on the underlying Section 301 investigatory findings.  The Trade Act cannot reasonably be read to provide USTR with authority to quadruple the order of magnitude of the tariff actions it has previously.  In addition, before taking such action, USTR is required to provide interested parties affected by the action an opportunity to present views concerning the effect of the action and whether such action is appropriate.  19 U.S.C. § 2417(a)(2).

3. Here, while Defendants did request public comments on the proposed List 3 action, the decision to impose the proposed tariffs appeared to be pre-determined.  Specifically, with respect to List 3, at the President's direction, USTR identified "$200 billion worth of Chinese goods for additional tariffs."  *See* The White House, *Statement from the President Regarding Trade with China* (June 18, 2018), https://www.whitehouse.gov/ briefings-statements/statementpresident-regarding-trade-china-2/.  While USTR sought comments concerning the proposed action, including the appropriate aggregate level of duties, as discussed below, it did not provide its views in response to any of the thousands of comments submitted by interested parties regarding the appropriateness of the duties or provide its rationale for removing certain tariff lines while retaining others from the proposed List 3 tariff list.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. at 47,974.  USTR merely stated that it had removed certain tariff lines while the aggregate level of duties remained the same - $200 billion.  *See id.*

4. The Defendants' imposition of List 3 tariffs is arbitrary and violates the Administrative Procedure Act ("APA").  USTR (1) failed to provide sufficient opportunity for comment by requiring interested parties to submit affirmative and rebuttal comments *on the*

*same day*; (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the determinations it made. USTR did not explain how scores of comments submitted in response to the announcement of the List 3 tariffs had a bearing on its final decision to promulgate the tariffs. USTR's decision making appears preordained in violation of the standards of the APA.

5. The Court should set aside Defendants' actions as ultra vires and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 3.

## JURISDICTION

6. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7. Yamamoto, a California based company doing business as Yamamotoyama U.S.A. is a supplier of specialty green tea and seaweed to supermarkets and restaurants around the world. Yamamoto imported products under subheadings 1212.21.0000, 2008.99.9190, 2522.10.0000 and 7310.29.0050 with respect to which it paid the List 3 duties.

8. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR

conducted the Section 301 investigation and issued the decisions on imposition of tariffs under List 3.

10. Ambassador Katherine Tai currently holds the position of USTR and serves as the head of the Office of the USTR. At the time the decisions were made to impose the List 3 duties, Robert E. Lighthizer held the position of USTR and served as head of the Office of USTR. In these capacities, he made numerous decisions regarding List 3.

11. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3.

12. Defendant Troy Miller is the Senior Official Performing the Duties of the Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 3. At the time the duties were initially imposed, Mark A. Morgan was the Acting Commissioner of CBP with responsibility for overseeing CBP's collection of duties paid by Plaintiff under List 3.

## STANDING

13. Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; see 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 adversely affected and aggrieved the Plaintiff because it was required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

14. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15. The instant action contests action taken by Defendants that resulted in List 3. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

4

*Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).  Plaintiff's claims accrued upon liquidation of its entries subject to List 3 tariffs, at which time CBP determined those duties to be final, and thus Plaintiff has timely filed this action with respect to all such entries that were not already liquidated as of the date two years prior to this action being filed.  Alternatively, Plaintiff's claims accrued upon deposit of List 3 tariffs at the time of entry, and thus Plaintiff has timely filed this action with respect to all such entries filed within the previous two years of this action.  Alternatively, Plaintiff's claims relating to entries subject to 25% tariffs under List 3 accrued at the earliest on May 9, 2019, when notice was first published imposing the 25% duties.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*").  Plaintiff has therefore timely filed this action.

## RELEVANT LAW

16. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b).  If USTR determines that the investigation reveals an "act, policy or practice of a foreign country" that is "unreasonable or discriminatory and burdens or restricts interstate commerce," USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id.* §§ 2411(b), (c)(1)(B).

17. Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  *Id.* § 2414(a)(1)(B), (2)(B).

18. Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act if the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* §§ 2417(a)(1)(B), (C).

# PROCEDURAL HISTORY

I. **USTR's Investigation**

19. On August 18, 2017, based on the direction of then President Trump, USTR initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20. On March 22, 2018, USTR released a report announcing the results of its investigation. Office of the United States Trade Representative, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation "are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17. USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id*. at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id*. at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id*. at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

21. On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." Office of the United States Trade Representative, *Section 301 Fact Sheet* (Mar. 22, 2018), https://ustr.gov/about- us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR indicated that, consistent with a directive from then President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id*.; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II. Lists 1 and 2

22. Within the 12-month statutory deadline from the initiation of the investigation in August 2017, Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so- called Lists 1 and 2. *See* 19 U.S.C. § 2414(a)(2)(B).

23. On April 6, 2018, USTR announced its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list represented a total value of "approximately $50 billion in terms of estimated annual trade for calendar year 2018", which was "commensurate with an economic analysis of the harm caused by China's . . . policies to the U.S. economy, as covered by USTR's Section 301 investigation." *Id*.; Office of the United States Trade Representative, *Under Section 301 Action, USTR Releases Proposed*

*Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

24. On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% ad valorem, representing approximate annual trade value of $34 billion - a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710, 28,711 (June 20, 2018).

25. At the same time, USTR announced a proposed "List 2" with "an approximate annual trade value of $16 billion covering 284 tariff subheadings on which it intended to impose an additional 25% *ad valorem* duty. *Id*. at 28,711-12. The final list of products comprising List 2 was published on August 16, 2018. *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.   List 3

26. The imposition of tariffs under List 1 and List 2 prompted China to threaten the imposition of retaliatory duties on the same value of imports from the United States. In response, then President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." The White House, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

27. On June 18, 2018, in response to China's threatened retaliation, then President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion. The White House, *Statement from the President Regarding Trade with China* (June 18, 2018),

https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods.  This is unacceptable.").

28.    Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than address any of the specific harms identified in its Section 301 investigation.  Office of the United States Trade Representative, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

29.    China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

30.    In response, USTR published a notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty" on a list of products from China with an annual trade value of approximately $200 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 33,608, 33,609 (July 17, 2018).  USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action . . . if . . . such action is being taken under [S]ection 301(b) of this title and is no longer appropriate." *Id*. at 33,609.

USTR initially set a deadline of August 17, 2018, for initial comments; August 20-23, 2018, for a public hearing; and August 30, 2018, for rebuttal comments. *Id*. at 33,608.

31. In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action though it did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *Id*. USTR's press statements also confirmed that China's retaliatory tariffs were the prime reason for the additional duties on $200 billion worth of Chinese goods. Office of the United States Trade Representative, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), https://ustr.gov/about- us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

32. On August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% ad valorem. Office of the United States Trade Representative, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

33. Shortly thereafter, at the direction of then President Trump, USTR formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.* at 38,761; *see also* Office of the United States Trade Representative, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

34. At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both

*initial and rebuttal* comments from the public. *See Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. *See* Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Approximately 350 witnesses appeared at the six-day hearing with over 6,000 comments being submitted. *Id.*

35. Soon after receiving final comments from the public, on September 17, 2018, then President Trump announced that he had directed USTR to place additional tariffs on roughly $200 billion of imports from China acknowledging that China's retaliatory tariffs prompted his action. *See* The White House, *Statement from the President* (Sep. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.

36. Following the President's announcement, USTR published the final "List 3" – a list of products subject to an additional duty of 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019." *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. at 47,974. The duty would be applicable to all listed products that enter the United States from China on or after September 24, 2018. *Id*. USTR did not specifically respond to any of the over 6,000 comments or any of the testimony provided by roughly 350 witnesses. *Id*.

37. As legal support for its action, USTR cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id*. (brackets omitted). USTR stated that the relevant burden

11

"continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id*.  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id*. at 47,975.

38. As a result of negotiations between the two countries, the scheduled increase in List 3 duties from 10 to 25% was delayed in December 2018, and again in February 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

39. After the negotiations failed in May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  Unlike with past imposition of new tariffs, USTR did not seek public comment, but rather simply announced that the increase would occur.  *Id*.

40. Instead, in June 2019, USTR invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products from the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

41. The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint.

## STATEMENT OF CLAIMS

### COUNT ONE

### (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

42. Paragraphs 1 through 41 are incorporated by reference.

43. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

44. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 tariffs.

45. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR's imposition of List 3 tariffs is not based on a determination as required by Section 301 of the Trade Act.

46. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September, well over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

13

47. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

48. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). USTR is authorized to take such action only after providing interested parties affected by the action an opportunity to present views regarding the appropriateness of the action. Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

49. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are *ultra vires* and contrary to law.

## COUNT TWO
## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

50. Paragraphs 1 through 49 are incorporated by reference

51. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

52. Defendants exceeded their authority under the Trade Act in promulgating List 3 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

53. Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

54. Defendants also promulgated List 3 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3.

\* \* \*

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court

(1) declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3) vacate the List 3 rulemaking;

(4) order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3;

(5) permanently enjoin Defendants from collecting any duties from Plaintiff pursuant to List 3;

(6) award Plaintiff its costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Nancy A. Fischer
Nancy A. Fischer
Benjamin J. Cote
Moushami P. Joshi

Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, N.W.
Washington, DC  20036
(202) 663-8000
nancy.fischer@pillsburylaw.com

*Counsel to Plaintiff Yamamoto of Orient, Inc.*

# **CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on May 7, 2021, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/Nancy A. Fischer
Nancy A. Fischer